**FLANNERY et al. v. EBLEN.**
**No. 4746.**

Court of Civil Appeals of Texas. Amarillo.
April 19, 1937.

Rehearing Denied June 21, 1937

Marshall & Perkins, of Quanah, for appellants.

Wm. B. Combest, of Paducah, and W. F. Schenck, of Lubbock, for appellee.

JACKSON, Justice.

On July 21, 1923, appellant Gussie Flannery married W. E. Eblen, her first husband, with whom she lived until December 11, 1934. On that date she obtained a decree divorcing her from his bed and board. Their property rights were settled by a written agreement which was made a part of the judgment and approved by the court. During the time she lived with her husband, their daughter, Billie Jean, was born. W. E. Eblen did not contest the suit for divorce, and the wife was given the custody of the child, however, the husband was adjudged the right to visit and associate with his daughter at reasonable times.

Very shortly after the divorce decree, W. E. Eblen married his second wife and continued to reside in Cottle county. Mrs. Eblen, with her daughter, moved to Quanah, Tex., and in November, 1935, she married her second husband, J. S. Flannery, and, with him and Billie Jean, moved to Gregg county, Tex., where they still reside.

On March 28, 1936, W. E. Eblen filed this proceeding in the district court of Cottle county against Gussie Flannery and her husband, the purpose of which was to secure a modification of the judgment granting the custody of Billie Jean to her mother. The modification he sought was an order permitting the child to visit with him during school vacation. He prayed for orders to compel Gussie Flannery to abide by and perform the decree of the court authorizing him to see and visit with his daughter. He also invoked the jurisdiction of the court to enter an order making certain the provision in the divorce judgment, reading as follows: "It is further ordered, adjudged and decreed by the court that Billie Jean Eblen, a girl nine years of age, be, and she is hereby awarded to plaintiff, Mrs. Gussie Eblen, but with the privilege that defendant, W.

E. Eblen, is to have the right and privilege of seeing and being with said child at all reasonable times."

He alleged that Mrs. Flannery had failed to abide by and perform the above order; had refused to permit him to see and visit his daughter, and refused to permit the child to see him; that he frequently went to the trouble and expense of visiting with Billie Jean at reasonable times, but in many instances had been denied this privilege, without justification; that he loved his daughter and she loved him, and these denials caused not only him, but her, much grief and suffering; that he had often written to Billie Jean, but she failed to receive some of his letters; and her mother advised her against writing to him and sought to prejudice the child and poison her mind against her father by improper influence, representations, coercion, intimidation, and threats of punishment, and thereby prevent her from having the proper contact, association, advice, and counsel of her father, which was contrary to the wishes and desires of Billie Jean.

In due time and in proper form, the appellants, Mrs. Flannery and her husband, filed their pleas of privilege to be sued in Gregg county, where they maintained their residence.

W. E. Eblen filed his controverting affidavit, stating generally the facts alleged in his petition, and pleaded that the language in the divorce decree adjudging him the right to visit his daughter constituted a material part of said decree and should be observed, which Mrs. Flannery had wholly failed and refused to do; that a court at all times had jurisdiction to enforce its decrees and for such purposes make certain and definite the language of its judgments, and his suit or motion was, among other things, to have said decree and order stating the right and privilege decreed to him of visiting with Billie Jean made certain and effective. He referred to his petition the decree of divorce and the written contract which was made a part thereof, and made all of such instruments a part of his controverting affidavit.

On a hearing, the court overruled the pleas of privilege from which order this appeal was perfected.

It is apparently settled in this state that the venue of a suit for readjudicating the custody of a child or children because of the change in conditions after the divorce decree is granted is fixed in the county of the residence of the parent to whom the custody has been awarded. Black et al. v. Black (Tex.Civ.App.) 2 S.W.(2d) 331; O'Quinn v. O'Quinn (Tex. Civ.App.) 57 S.W.(2d) 397.

The trial court recognized this to be the law, but was of the opinion that he had the power and authority to amend and correct clerical errors, defects in form, or add any clause necessary to make the judgment so certain as to render it effective and enforceable.

Without stating it in detail, we are of the opinion that the testimony was sufficient to sustain the material allegations of appellee's pleadings. It tended to show that Mrs. Flannery had violated the part of the judgment decreeing W. E. Eblen the right and privilege of seeing and visiting with his daughter at "all reasonable times"; that she and her husband were rather assiduous in trying to undermine and alienate the affection of Billie Jean for her father. The language of the judgment relative to his rights is very uncertain and indefinite. It does not provide definitely when, how often, or how long the father's visits with the child shall continue, or whether he and his daughter may be alone during such visits, or shall remain in the presence of the mother or some other person, or whether the daughter shall be allowed to accompany her father to any place of amusement, or Sunday School, or church, or any other place. The words, "A Reasonable Time," have no precise definition, and their meaning depends entirely on the facts and circumstances of each particular case.

In 52 C.J. p. 1182, par. 2, "Reasonable Time" is defined as: "A relative and flexible term, which cannot be defined by any prescribed rule and the meaning of which in a particular case depends on the context and attendant circumstances. * * * It has been variously defined as meaning as soon as circumstances will permit; as soon as convenient; * * * so much time as is necessary under the circumstances; * * * such length of time as may fairly, and properly, and reasonably be allowed or required, having regard to the nature of the act or duty and to the attending circumstances."

Owing to this uncertainty, it is very improbable if a sufficient showing could be made of the violation of the order to au-

thorize the punishment of Mrs. Flannery by the court for contempt.

■ While it is the law that the trial court may not, after the term at which the judgment was rendered, correct what is termed a judicial error, "The power of a court to correct inadvertent judgment entries or irregularities * * * is derived from the constitution which creates the court," and are not dependent upon legislative authority. 25 Tex.Jur. p. 530, par. 135.

"Although jurisdiction over the subject matter and the parties is generally exhausted after final judgment, yet, in a proper case, the court may make other orders not inconsistent with the adjudication. Thus necessity for protecting persons or property in the control of the court may arise after judgment has been pronounced, and the exercise of jurisdiction over such persons or property may be entirely consistent with the integrity of the final judgment and therefore not affected by the rule which forbids a change in the judgment after expiration of the term. Certainly a court has inherent authority at any time to direct such process or make such orders as may be necessary to carry its judgment into execution." 25 Tex.Jur. p. 531, par. 137.

After stating that the court after the term is closed has no power to revise or modify a judgment on the merits, the Supreme Court as early as Chambers v. Hodges, 3 Tex. 517, 529, says: "This limitation upon the authority of the court, will not prevent the correction of clerical errors or mistakes, or defects of form, or the addition of such clause as may be necessary to carry out the judgment of the court."

In Trammell v. Trammell, 25 Tex.Supp. 261, the Supreme Court says: "The court may, after the term, amend its records and judgments so far as to correct merely clerical errors or mistakes, or by adding such omitted clause in the rendition of the judgment as may be necessary to give it effect, when there is anything in the judgment by which to amend." ·

This judgment is on its face indefinite, uncertain, and ambiguous.

See, also, Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040; Gerlach Mercantile Co. v. Hughes-Bozarth-Anderson Co. (Tex. Civ.App.) 189 S.W. 784.

"A judgment may properly be amended so as to relieve it of ambiguity.

"Incorrect and erroneous recitals may be corrected, omitted recitals supplied, and improper recitals stricken out, by amendment." 34 C.J. p. 236.

See, also, Freeman on Judgments, vol. 1, p. 274, par. 142; Black on Judgments, vol. 1, p. 178, par. 157.

Under the records in this case and the authorities, we are of the opinion that the court correctly overruled the pleas of privilege, and the judgment is affirmed.