Patsy Ruth McHONE, Relator,

v.

Honorable Dan GIBBS, Judge et al.,
Respondents.

No. B–2733.

Supreme Court of Texas.

July 28, 1971.

Cooper & Winikates, Haskell H. Cooper and Diamond J. Pantaze, Dallas, for relator.

Hooks, Wyrick & Rodehaver, Sam Rodehaver, Dallas, for respondents.

STEAKLEY, Justice.

This is an original mandamus proceeding. The relief sought, in substance, is the vacation of a second judgment of Honorable Dan Gibbs, Judge of the Court of Domestic Relations No. 3 of Dallas County, Texas, by which Judge Gibbs attempted to vary the terms, and thereby preclude enforcement, of his previous judgment in a divorce proceeding which became final upon affirmance. See McHone v. McHone, 449 S.W.2d 488 (Tex.Civ.App.1969, writ dism'd w. o. j.). The court of civil appeals has denied relator's motion for leave to file petition for mandamus seeking the same relief as here. We conditionally grant the writ.

Art. V, Sec. 3, of the Texas Constitution Vernon's Ann.St. authorizes the Legislature to confer original jurisdiction on the Supreme Court to issue writs of mandamus in such cases as may be specified, except as against the Governor of the State. Art. 1733 [1] was enacted pursuant thereto and provides that "The Supreme Court or any Justice thereof, shall have power to issue writs of * * * mandamus agreeable to the principles of law regulating such writs, against any district judge, or Court of Civil Appeals or judges thereof, or any officer of the State Government, except the Governor."

The Court of Domestic Relations No. 3 of Dallas County, one among many in Texas, was created by legislative enactment in 1967. Art. 2338–9b. The judge of the

1. References are to Vernon's Annotated Civil Statutes.

court is appointed and elected as provided by law for district judges (Sec. 3). The jurisdiction of the court is concurrent with the district courts in many respects including "of all divorce * * * cases, including the adjustment of property rights and custody and support of minor children * * * and all other cases involving justiciable controversies and differences between spouses * * *." (Sec. 5). District courts may sit for, hear and decide cases pending in the court (Sec. 6). The county officials render the court the same service with reference to process and writs as required by law for district courts (Sec. 8). The court has the power to issue extraordinary writs in cases in which it has jurisdiction as provided for district courts (Sec. 9). Appeals from judgments and orders of the court are to the court of civil appeals as provided for appeals from district courts (Sec. 15). "The practice and procedure, * * * issuance of process and all other matters pertaining to the conduct of trials and hearings" in the court shall be governed by the laws and rules pertaining to district courts (Sec. 16).

It is also of significance that the enactment of Art. 1733 was at a time when district judges were exercising the jurisdiction and performing the judicial functions later assigned to the judges of courts of domestic relations on a concurrent basis. It would seem without doubt that the Legislature intended for the mandamus powers of this court to follow the district court jurisdiction thus vested in the newly created courts of domestic relations.

It has been stated in another context not involving the power of this Court to award the writ of mandamus that a court of domestic relations is not a district court established by the Constitution. See Jordan v. Crudgington, 149 Tex. 237, 231 S.W.2d 641 (1950). It does not follow, however, that a judge of a court of domestic relations, exercising as he does, concurrent jurisdiction with a district court in the enumerated respects, and identically governed in other respects, is not a statutory district judge within the purview of Art.

1733. Otherwise, the great object of the writ of mandamus to prevent the failure of justice where there is no established specified remedy, see Yett v. Cook, 115 Tex. 175, 268 S.W. 715 (1925), would be frustrated. Accordingly, we hold that we have the power to issue the writ.

■ The original judgment in question was entered by Judge Gibbs under date of February 20, 1969, and, as stated before, this judgment was affirmed by the court of civil appeals. The mandate of that court was issued under date of May 19, 1970. The judgment inter alia decreed that relator should have and recover the sum of $5,263.97 from William Roy McHone, Sr., with interest thereon at six per cent per annum from the date of the judgment, and with a lien against certain described separate property awarded to McHone. Relator attempted to obtain a levy of execution under the judgment after it became final but this was interdicted by a second judgment of Judge Gibbs dated August 25, 1970, which decreed that relator have and recover the sum of $4,400.00 in lieu of the originally adjudicated sum of $5,263.97; that relator recover interest on such sum at the rate of six per cent per annum beginning May 19, 1970, in lieu of from February 20, 1969, the date of the original judgment; that the execution levied be stayed and relator have her writ of execution only after the so-called clarifying judgment became final; and that McHone recover the costs of the subsequent proceeding against relator.

The second judgment describes the proceeding which brought it about as a motion by McHone, "to clarify the Judgment of this Court entered in this cause on the 20th day of February, 1969," and further recites that the court heard evidence "in support of and against" the motion. Although the record before us is not entirely clear, it seems that the court was attempting in this manner to adjudicate a controversy which had arisen between the parties growing out of other provisions of the judgment. This is not an accepted procedure to accomplish

these purposes although it was somewhat in the nature of a proceeding to correct errors by judgment nunc pro tunc. But it was not claimed that the original judgment did not speak truly the judgment as rendered or that the judgment roll was inaccurate in these respects. Such being the case, the judge was powerless to reopen the controversy as closed and sealed by the original judgment and to materially alter its terms as he attempted to do. Cf. Universal Underwriters Ins. Co. v. Ferguson, Tex., 471 S.W.2d 28 (1971), and Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040 (1912). Ex parte Lohmuller, 103 Tex. 474, 129 S.W. 834 (1910), upon which respondents place principal reliance, as well as the other cases cited, are not apposite. Lohmuller involved the power of the court to order alimony for support of the wife during appeal of a divorce judgment. The court made clear that an order so doing was not inconsistent with the adjudication represented by the judgment and that, even so, the judgment had not become final and an end put to the case. Flannery v. Eblen, 106 S.W.2d 837 (Tex.Civ.App.1937, error dism'd) also cited by respondents, was a suit to change child custody because of change in conditions after the divorce decree. The court expressly recognized that a court may not correct judicial errors after final judgment or make other orders inconsistent with the adjudication.

In Yett v. Cook, supra, we exercised the mandamus powers of this Court to require a lower court to grant, protect and make efficacious the right of appeal and supersedeas against a positive step taken by a district judge beyond his lawful power and jurisdiction. Here we are asked to require a judge exercising district court jurisdiction to vacate a judgment changing a prior final adjudication in material respects, and hence beyond his power. We did essentially this in Buttery v. Betts, 422 S.W.2d 149 (Tex.Sup.1967), where the judge undertook to grant a new trial after the court had lost jurisdiction. We did so against the contention that the parties adversely af-

fected had an adequate remedy at law by way of an appeal after a retrial on the merits. Relator here, as was said there, is entitled to her judgment. Our writ will not control in any way the judicial discretion of the respondent judge, see Texas State Board of Examiners in Optometry v. Carp, 388 S.W.2d 409 (Tex.Sup.1965); the case is one where no judicial discretion was or could have been exercised, cf. Maresca v. Marks, 362 S.W.2d 299 (Tex. Sup.1962). See also Crouch v. Craik, 369 S.W.2d 311 (Tex.Sup.1963); Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946); Thomason v. Seale, 122 Tex. 160, 53 S.W.2d 764 (1932); Terrell v. Greene, 88 Tex. 539, 31 S.W. 631 (1895).

Finally, our writ need operate only against the respondent judge. The operative effect of Rule 436, Texas Rules of Civil Procedure, is that the judgment of the court of civil appeals becomes that of the trial court for purposes of enforcement and execution. See Thorndale Mercantile Co. v. Continental Gin Co., 241 S.W. 260 (Tex.Civ.App.) rev'd on other grounds, 254 S.W. 939 (Tex.Com.App.1923, jdgmt. adopted); Williams v. Foster, 233 S.W. 120 (Tex.Civ.App.1921, no writ); and O'Neil v. Duffey, 250 U.S. 772 (Tex.Civ.App. 1923, no writ).

We assume that the relator judge will vacate the judgment in question. A writ of mandamus will issue only if he does not do so.

REAVLEY, Justice (concurring).

I agree that the second judgment changes the original judgment and is therefore void. It should be added that the original judgment does not make an unqualified award of $5,263.97 but further provides a credit on that sum in the event relator fails to deliver certain property to McHone. As I interpret the holding here, it merely prevents a change in the terms of the original judgment, and the trial judge is not prohibited from resolving a subsequent conflict between the parties as to the sum to be used finally in the writ of execution.