Judith Ellen LAMPHERE, Relator,

v.

Oswin CHRISMAN, Judge, Domestic Relations Court Number Four of Dallas County, Texas, Respondent.

No. B–6783.

Supreme Court of Texas.

July 27, 1977.

Berman, Fichtner & Mitchell, Jay S. Fichtner, Toby L. Gerber, Dallas, for relator.

Laurel A. Bates, Ronald E. Massingill, Dallas, for respondent.

GREENHILL, Chief Justice.

This original mandamus proceeding arises from a controversy between Judith Lamphere and Thomas Lamphere over the custody of their seven-year old daughter, Julie Lamphere. Our respondent, the Honorable Oswin Chrisman, Judge of the Domestic Relations Court Number Four of Dallas

County, has denied Judith's application for a writ of habeas corpus for the return of Julie, who is living with her father. Judith thereupon instituted this action to compel Judge Chrisman to grant the writ of habeas corpus. Because we believe that Judge Chrisman's order below is in conflict with Section 14.10 of the Texas Family Code,[1] we conditionally grant the requested writ of mandamus.

In September of 1970, the Lampheres' marriage was dissolved by a judgment rendered by the Circuit Court of Saint Louis County, Missouri. The judgment awarded Judith the permanent care, custody and control of Julie; and reasonable visitation rights were given to Thomas. It is undisputed that the Missouri court had jurisdiction over the Lampheres and that the judgment of divorce and custody has never been modified.

In November of 1974, Judith and Thomas executed an agreement whereby Thomas was to have the care of Julie at his home in Dallas, Texas. Judith remained in St. Louis, but she was to have the right to custody at any time she elected, provided that Thomas was given seven-days' written notice. The agreement was terminable at the will of Judith on fifteen-days' written notice, and it expressly provided that it in no way altered the Missouri court's award of custody to Judith.

Thomas then took Julie to Dallas, and she has lived there with him until the present time. Her stay in Dallas, however, has not been uninterrupted. In the summer of 1975, she visited her mother in St. Louis for two months. Similarly, Julie lived with Judith in St. Louis for two months in the summer of 1976. Julie also spent six days with her mother in Missouri in April of 1977.

On April 19, 1977, Thomas filed suit in the Domestic Relations Court Number Four of Dallas County and sought his appointment as managing conservator of Julie. Judith was served with process in St. Louis, and she then filed a special appearance in

the Texas court. She also sought a writ of habeas corpus for the return of the custody of Julie pursuant to the Missouri court decree. After a hearing, the trial court overruled Judith's plea to the jurisdiction, denied her application for the writ of habeas corpus, and appointed Thomas temporary managing conservator.

■ Judith then filed this action, which asks this Court to direct the trial judge to issue the writ of habeas corpus and thereby enforce the Missouri court custody decree. At the outset, we note that we have jurisdiction to mandamus the judge of a court of domestic relations. Texas Revised Civil Statutes Annotated Article 1733; *McHone v. Gibbs*, 469 S.W.2d 789 (Tex.1971).

The habeas corpus procedure in child custody cases is governed by Section 14.10 of the Texas Family Code. That section provides in relevant part:

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

(b) The court shall disregard any cross action or motion pending for modification of the decree determining managing conservatorship, possession, or support of or access to the child unless it finds that the previous order was granted by a court of another state or nation and that:

(1) the court did not have jurisdiction of the parties; or

(2) the child has been within the state for at least 12 months immediately preceding the filing of the petition for the writ.

\* \* \* \* \* \*

■ We have held that the Legislature, by enacting Section 14.10, intended to change the rule that the right to possession of the child may be readjudicated in a hear-

---

1. Vernon's Texas Codes Annotated, Family Code Section 14.10. All statutory references herein are to Vernon's Texas Family Code Annotated, unless otherwise indicated.

ing on an application for a writ of habeas corpus. The general rule now is that the writ should be granted when the relator shows that he or she is entitled to custody of the child by virtue of a valid and subsisting court order. The right to possession may *not* be relitigated in the habeas corpus hearing; the relator is entitled to an issuance of the writ immediately on a showing of his or her right to custody. Further, mandamus is a proper remedy to compel enforcement of the relator's right to custody. *McElreath v. Stewart,* 545 S.W.2d 955 (Tex.1977); *Standley v. Stewart,* 539 S.W.2d 882 (Tex.1976). For these purposes, we recognize no differences between valid custody orders of our state and those of sister states beyond the distinctions set forth in the statute. *See Russell v. McMurtrey,* 526 S.W.2d 270 (Tex.Civ.App.1975, writ ref'd n. r. e.). Therefore, the writ of habeas corpus in this case should have been granted when Judith proved her right to custody under the Missouri court judgment, unless it was proper to relitigate the right of possession under Section 14.10(b).

Thomas argues that the trial court properly redetermined the right to possession because Judith's custody order is from Missouri and because "the child has been within the state [Texas] for at least 12 months immediately preceding the filing of the petition for the writ." Section 14.10(b)(2). We disagree. The uncontroverted evidence shows that Julie was with her mother in Missouri for two months in the summer of 1976 and for six days in the spring of 1977. These periods were within the twelve months immediately preceding the filing of the petition for the writ; so the exception of Section 14.10(b)(2) does not apply to this case. Nor does the exception of Section 14.10(b)(1) apply, because it is undisputed that the Missouri court had jurisdiction of the parties. Since neither 14.10(b) exception is applicable, the general rule of the subsection controls; and the trial court, in deciding Judith's entitlement to the writ of habeas corpus, should have disregarded Thomas' request for his appointment as managing conservator.

■ Thomas argues that we here apply a too literal interpretation to Section 14.10(b). He says that the subsection should be interpreted to mean that the child's *residence* or *domicile* shall have been in the State of Texas for the twelve months immediately preceding the filing of the habeas corpus application. We cannot subscribe to that view. If the Legislature had meant for residence or domicile to be determinative here, it certainly could have used those terms in phrasing Section 14.10(b)(2). Furthermore, an inquiry into a child's residence or domicile would often raise difficult questions of dubious relevance to the question of whether the foreign custody decree should be immediately enforced, especially when the parents of the child reside in different states. We prefer to apply what we perceive to be the plain meaning of the statute, and we hold that the child must be *physically present* within the state for the required length of time before the exception of Section 14.10(b)(2) may be invoked.

■ Thomas argues that it would be absurd to require the child's presence to be continuous and uninterrupted for the entire twelve-month period. We are inclined to agree that such a strict construction might lead to absurd results. We do not believe the Legislature intended that a child's mere absence from this state for a few hours or days should prevent a Texas court's redetermination of the right to possession in a habeas corpus proceeding. For example, if a child were sent to a summer camp in another state, or accompanied her father on an ordinary vacation trip in another state, such a temporary absence would not automatically terminate the time period in Texas. Counsel for Judith concedes this. On the other hand, the Legislature could have stated, had it so intended, that the child's presence should be for the principal part of the preceding twelve-month period. *See, e. g.,* Section 11.06(b). Despite the absence of such language, we believe that the Legislature did not intend that the child's presence in Texas be continuous and uninterrupted for the entire twelve-month period. We hold that the child must be present in Texas

for the period specified by Section 14.-10(b)(2), except for absences which are so brief as to be insignificant. This question is one of law that the court should decide in view of the facts and circumstances of the particular case.

 In this case we hold that Julie's absence from Texas for two months and six days was more than an insignificant visit beyond our borders. In making this holding, we have considered the relative length of time involved; and we also deem it important that when Julie was outside of Texas, she was living with the parent who here seeks custody. The exception of Section 14.10(b)(2) therefore did not come into play, and Judith was entitled to the issuance of the writ without the relitigation of the right to possession question.

Finally, we emphasize that our holding here does not dispose of any of the issues raised by Thomas' suit for his appointment as managing conservator. We here hold only that Section 14.10 requires that the habeas corpus writ should be granted immediately on the relator's showing of his or her right to possession under an existing court order. Section 14.10 does not require the trial court to *dismiss* pending suits or motions for change of custody; it requires only that these matters be *disregarded* until such time as the application for the writ of habeas corpus is disposed of. Therefore, after the writ is either issued or denied, the trial court is free to continue with the disposition of any suits or motions for change of custody. The jurisdictional or other questions raised in the change of custody suit may then be considered on appeal from the final judgment in that suit. To the extent that the holding in *In re Kamont*, 537 S.W.2d 86 (Tex.Civ.App.1976, writ ref'd n. r. e.) may conflict with our views, it is disapproved.

It is assumed that Judge Chrisman will vacate his order denying Judith's application for habeas corpus and that he will issue the requested writ. A writ of mandamus will issue only if he declines to do so.

Pursuant to Rule 515, Texas Rules of Civil Procedure, no motion for rehearing will be entertained.