**Marvin MILLER, Surety, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 66228.**

Court of Criminal Appeals of Texas, Panel No. 3.

March 18, 1981.

Rehearing Denied Feb. 5, 1986.

Charles D. Butts and Shirley W. Butts, San Antonio, for appellant.

Bill M. White, Dist. Atty., and Barry P. Hitchings and John J. Horn, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

TOM G. DAVIS, Judge.

This is an appeal by Marvin Miller as surety from six final judgments forfeiting appearance bonds totaling $92,500.

In each of the six cases, Lawrence Tatsch was principal and Marvin Miller was surety. On December 6, 1979, final judgments of forfeiture based upon the State's motion for summary judgment and accompanying documents were entered for the full amount of each of the bonds by the Honorable H.F. Garcia, then presiding judge of the 144th Judicial District Court. The State subsequently on April 24, 1980, filed an application in each of the cases asking the court to enter a judgment nunc pro tunc. On July 17, 1980, a hearing was held before the Honorable Edward C. Prado in the 144th Judicial District Court on the State's motion for a judgment nunc pro tunc. An extensive hearing was held and after the submission of post-hearing briefs, the State's motion was granted and a final judgment of forfeiture nunc pro tunc was entered on September 8, 1980, in each of the cases. Subsequently, on September 23, 1980, an amended judgment nunc pro tunc was entered by the trial court in response to objections filed by the surety appellant Marvin Miller. It is from the entry of each of these amended judgments nunc pro tunc that this appeal is taken.

The appellant presents two contentions on this appeal. He first argues that the trial court erred in entering judgments nunc pro tunc after the State of Texas had induced the trial court to enter a final judgment and the State was therefore estopped from denying the validity of the final judgments previously entered. The appellant next contends that the trial court erred by adding the appellant's name to each of the six judgments that had become final by operation of law which had excluded the appellant, thereby correcting a judicial error after the judgments had become final, contrary to all Texas law. For the reasons stated below, we disagree and affirm.

An examination of the voluminous records in this case discloses that on November 30, 1979, a hearing was held before Judge Garcia on six motions for summary judgment in each of the bond forfeiture cases before us. The record of this hearing reflects in pertinent part as follows:

"THE COURT. All right. 79–CI–2384, 79–CI–2385, 79–CI–2386, 79–CI–2387, 79–CI–2388 and 79–CI–2389, each case entitled The State of Texas versus Lawrence Tatsch, Principal, and Marvin Miller, Surety ... In considering the cases that [have] been enumerated here in The State of Texas versus Lawrence Tatsch, Principal, and Marvin Miller, Surety, which are all bond forfeiture cases, is the Defendant in custody?

"MR. VALDEZ: He is not in custody.

"THE COURT: He is not now in custody anywhere in the United States?

"MR. VALDEZ: No, sir.

"THE COURT: All right. Then, in reviewing the motions for summary judgments filed by the State in all of these cases, the Court is going to grant the State's motion for a summary judgment in each one of these cases. The State will prepare a judgment accordingly."

At the hearing on the motion for entry of a judgment nunc pro tunc, Judge Garcia testified as follows on direct examination:

QUESTIONS BY MR. HITCHINGS:

"Q. Judge Garcia, in granting the State's motion for Summary Judgment, what was your intent in doing that?

"A. Granting the State's Motion for Summary Judgment? It was my intent, as the Judge of the 144th, to grant the judgment against Principal and Surety.

"Q. And that would apply in all six cases against Marvin Miller and Lawrence Tatsch?

"A. Yes, sir.

"Q. And when you made the statement, in the Statement of Facts, that the State will prepare a judgment accordingly, what did you expect from the State?

"A. I think my instructions to the State's Attorney was, 'to prepare a judge accordingly,' and that meant a judgment

against the Principal and Surety in all cases that were before the Court."

. .  .  .  .

"Q. Now, Judge Garcia, on December 6, 1979, do you recall being presented with judgments for your signature in these cases?

"A. I know judgment was presented to me. I don't have any independent recollection of when they were brought in, or how, or who.

"Q. In Cause Number 79–CI–2385, at the time that you signed that judgment, Judge Garcia, was it your intention to sign that judgment either remitting or exonerating Marvin Miller.

"A. No.

"Q. And in signing this judgment, Judge Garcia, did you intend that judgment to reflect what you—the decision that you had actually rendered on November 30th, 1979?

"A. Yes. I instructed the District Attorney, at that time, to bring in a judgment accordingly with my judgment against Principal and Surety in each case.

. .  .  .  .

"Q. And one final question, Judge Garcia. The judgments that you signed on December 6, 1979, did those judgments correctly coincide with your decision on November 30th, 1979?

"A. No."

In the recent case of *Alvarez v. State*, 605 S.W.2d 615 (Tex.Cr.App. 1980), this Court affirmed a final judgment forfeiting an appearance bond holding that a misrecital in the final judgment as to the court in which the forfeiture was taken was properly corrected by a judgment nunc pro tunc. This Court stated:

"The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not en-

tered of record at the proper time. *Holway v. Holway*, 506 S.W.2d 643 (Tex.Civ. App.—El Paso, 1974, no writ). Even though thirty days have passed after the entry of a judgment, a trial court retains the power to enter a nunc pro tunc order correcting any 'clerical error' which may appear in the judgment. *Quintanilla v. Seagraves Ford Inc.*, 522 S.W.2d 274 (Tex.Civ.App.—Corpus Christi, 1975, no writ). Whether an error is judicial or clerical in nature has been held to be a question of law. *Mathes v. Kelton*, 569 S.W.2d 876 (Tex. 1978). It has been noted that an error in the entry of a judgment will be styled as 'clerical' in nature, so long as the error did not come about as the product of judicial reasoning. *Nolan v. Bettis*, 562 S.W.2d 520 (Tex.Civ. App.—Austin, 1978, no writ)."

In the instant case, we conclude that the omission of the appellant's name from the original judgment signed on December 6, 1979, was clearly the result of clerical error. The State's motions for summary judgments were against both Tatsch as principal and appellant as surety. When the court called these motions for hearing it noted that both Tatsch and appellant were parties. The court in ruling on the motions stated, "the Court is going to grant the State's motion for a summary judgment in each one of these cases." Further, at the hearing on the motion to enter judgment nunc pro tunc, it is clearly reflected that the trial court intended to enter judgment against both the principal and the surety.[1] There is no evidence of any affirmative intent by the State to enter a judgment other than that pronounced by the court on November 30, 1979. As this Court held in *Alvarez*, a trial court retains the power to enter a nunc pro tunc order correcting a clerical error which may appear in the judgment even though more than thirty days have passed from the orig-

---

1. Compare *English v. State*, 592 S.W.2d 949 (Tex.Cr.App.1980) (signing of order granting new trial held to be clerical error) with *Garcia v. Dial*, 596 S.W.2d 524 (Tex.Cr.App.1980) and

*Haley v. Lewis*, 604 S.W.2d 194 (Tex.Cr.App. 1980) (dismissal of indictment held not to be clerical error).

inal entry of the judgment. Appellant's contentions are overruled.

The judgment is affirmed.

TEAGUE, Judge, dissenting.

The facts show that on November 20, 1976, the surety, Marvin Miller, made six bail bonds for the principal, Lawrence Tatsch, causing Tatsch to be released from the custody of the sheriff of Bexar County. On February 21, 1978, the causes were called for trial, but Tatsch did not appear and the bail bonds were ordered forfeited. A judgment nisi subsequently issued to make the forfeiture final, the surety was served, and he filed a sworn answer to the State's motion for summary judgment, alleging, inter alia, that the bail bonds were insufficient in law to warrant an adjudication of liability against him in favor of the State. See and compare *Balboa v. State*, Tex.Cr.App., 612 S.W.2d 553 (1981).

On March 20, 1979, the State filed a sworn motion for summary judgment, merely setting forth the prior events relating to the filing of the judgment nisi. A hearing was set for April 13, 1979. An amended judgment nisi was apparently filed on March 27, 1979, correcting an erroneous date: the original judgment nisi alleged erroneously the date of November 20, 1976, which was, as noted, the date the bail bonds were made and not the date of the forfeitures. Another sworn pleading in answer thereto was filed on April 11, 1979, and the matter was reset for May 4, 1979, reset again for May 11, 1979, and was thereafter reset for July 27, 1979, but not heard.

On August 22, 1979, another amended motion for summary judgment was filed, but was not sworn to. A hearing was set for October 5, 1979. The surety filed a first amended answer to this pleading, alleging and swearing to what he had sworn to and alleged earlier. In addition, the surety filed a "Response to Amended Motion for Summary Judgment," setting out why the State's motion for summary judgment was insufficient under law, and also filed a sworn "Motion to Quash Notice and Setting for Summary Judgment." On the hearing date, the attorney representing the State filed a sworn affidavit signed by D. Premont, who appears to be a secretary in the Bexar County District Clerk's office, in support of his motion for summary judgment. The matter was then reset again until November 30, 1979.

On November 30, 1979, a "trial" was held before the Hon. H.F. Garcia, presiding judge of the 144th Judicial District Court of Bexar County. On December 6, 1979, Judge Garcia signed a "Final Judgment," which was recorded in the minutes of the court. The "Final Judgment" states in pertinent part:

\* \* \* \* \* \*

It appearing to the Court after consideration of the pleadings and evidence herein that no sufficient cause is shown why Defendant, LAWRENCE TATSCH, did not appear in this Court on the 31ST DAY OF FEBRUARY, A.D., 1978, to answer THE STATE OF TEXAS on the charge by indictment herein filed and then pending, accusing Defendant of a felony, and that Judgment Nisi heretofore rendered against the said Defendant, LAWRENCE TATSCH, as Principal, and against MARVIN MILLER SURETY, on the bail bond of the said LAWRENCE TATSCH, should not be made final. *However, certain equitable grounds exist for remission of part of the principal sum;*

It is therefore, ORDERED, ADJUDGED AND DECREED that Plaintiff do have and recover of and from the said LAWRENCE TATSCH PRINCIPAL, the sum of TEN THOUSAND DOLLARS (10,000.00), with interest on such sum at the rate of 9 per cent per annum from date of judgment and cost of suit, for all of which let execution issue. (Emphasis added and supplied hereafter by the writer unless otherwise indicated.)

Thereafter, on December 14, 1979, the surety filed a motion for new trial, claiming the trial court erred in various ways at the "trial" on the motion for summary judg-

ment. An amended motion for new trial was later filed on December 28, 1979. Interestingly, these instruments make no reference to the principal, Lawrence Tatsch. As noted, by the "Final Judgement," Judge Garcia stated therein, in part: "however, certain equitable grounds exist for remission of part of the principal sum." To what or to whom this is directed is not shown by the "Final Judgment." A hearing on the motions for new trial was set for January 18, 1980, but was then reset for February 22, 1980. The attorney for the State filed a motion to deny the motion for new trial.

Finally, on February 22, 1980, a hearing was held and the trial court entered an order denying the amended motion for new trial. It provides, in part:

\*  \*  \*  \*  \*  \*

It is therefore ORDERED that the Judgment entered in this cause on the 6th day of December, 1979, be and it is hereby final and that Surety Defendant's Amended Motion for New Trial is hereby denied.

The surety gave notice of appeal on February 28, 1980, posted a cost bond, and actively pursued his appeal until April 15, 1980, at which time he filed an instrument entitled "Motion to Discontinue Appeal," stating therein that "inasmuch as the court did not render Judgment against him personally in the above numbered and entitled cause, he has no standing to appeal said judgment." The attorney for the State thereafter filed an application to enter a judgment nunc pro tunc alleging, among other things: "That a judgment was subsequently prepared from a dictation form book by a *clerical* employee of the Bexar County District Attorney's Office." "As a result of *clerical* error the name of the defendant-surety Marvin Miller was omitted from the judgment." "This judgment was given to a *clerical* employee of the Bexar County District Clerk's Office who took it to the Judge of the 144th Judicial District Court for signature." "As a result, the judgment that was signed and entered on the 6th day of December 1979 is at variance with the judgment that was actually rendered." Interestingly, another allegation made is that it was the day before the surety moved to dismiss his appeal that the attorneys for the State *learned* of the omission. The surety filed an objection and a supplemental objection to the entry of a judgment nunc pro tunc alleging, among other things, that "the State cannot hide behind the skirts of a secretary."

A hearing on the State's motion was then set for May 2, 1980, then reset for July 2, 1980, again reset for July 17, 1980, and finally held on September 8, 1980, at which time a "Judgment Nunc Pro Tunc" was prepared and signed by Judge Edward C. Prado, the then presiding judge. Notice of appeal was thereafter given by the surety on September 10, 1980, and a supersedeas bond was posted. Due to objections to the judgment nunc pro tunc, an amended judgment nunc pro tunc was entered, signed and filed on September 23, 1980.

A transcription of the "trial" held on November 30, 1979, reveals, in pertinent part, the following:

THE COURT: All right. Then, in reviewing the motions for summary judgments filed by the State in all of these cases, the Court is going to grant the State's motion for a summary judgment in each one of these cases. The State will prepare a judgment accordingly.

MR. VALDEZ: The Defendant objects to the ruling of the Court and notes its exception and states that there are several fact issues which are not resolved which the Court should have taken into consideration. *I have been advised by the State that they plan to file a motion for a new trial as soon as the judgment is entered.*

There is also a transcription of the hearing held on July 17, 1980 in the record. At that hearing, it was shown that the attorney for the State, after the hearing that day, returned to his office, wrote on the file, "Summary Judgment Granted," gave it to a Ms. Stella Garcia, his secretary, "and told her to type up the judgments on them

... I just dumped them on her desk and said make me some judgments on them ... She is a paralegal ... She is a secretary in the office and she knew what was going on ... I mean, I assume that she knew what was going on ... But I don't know what happened to them after I gave them to Stella." Stella Garcia testified that the nature of her work in the District Attorney's Office is *"Clerical"* in nature. She testified that the attorneys would "bring me the file and write the instructions in the file ... I do whatever is written on the file ... He would hand me the file and tell me what had happened, and tell me what I was supposed to do." In this instance, the file reflects: "On 11–30–79, judgment granted, H.C.," which refers to Hippolito Canales, who was then attorney for the State. When she received the file, she would then "write that down on a tablet and turn that into the typing center." When the "typing center" got through, she would take the final instruments to the District Clerk's bond forfeiture secretary and give them, usually, to Ms. Dee Premont, see *supra,* or one of her assistants. Apparently, no one proofread what was typed at the "typing center" to see if errors of any kind had occurred. Judge Garcia also testified and, over objection, stated, regarding the hearing on the judgment nisi, that it was his "intent" that the judgment was to be against both the principal and the surety. Judge Garcia testified that when the judgment was presented to him for signature, he did not mistakenly sign it. "I signed that judgment." *"They brought me the wrong judgment."* As far as Judge Garcia was concerned, the overruling of the motion for new trial on February 22, 1980 ended the matter.

The majority construes the error mentioned above as one of "clerical error" not "judicial error" and, relying on *Alvarez v. State,* 605 S.W.2d 615 (1980), holds that the actions below were proper and upholds, by affirming the trial court, the entry of the nunc pro tunc judgment.

*Alvarez,* supra, is simply not in point to the issue before the Court. In *Alvarez,* the record showed that, due to an error in preparation by the Deputy District Clerk of Tarrant County, the final judgment recited the wrong court in which the judgment nisi had been made final. This was held to be *clerical* error. Even though 30 days had passed after the entry of the final judgment, the trial court retained the power to enter a nunc pro tunc order correcting this "clerical error." That is a far cry from the facts here, as there the erroneous entry regarding which court had heard the case is most assuredly "clerical error," and not "judicial error."

Judge Davis, the author of the majority opinion, remarked years ago in a footnote:

A correction can be made to reflect what actually occurred at trial by entry of nunc pro tunc judgment, *but correction can be only as to what was done and not as to what should have been done. Chaney v. State,* 494 S.W.2d 813, 814 (1973).

The majority's holding allows the State to make a correction to show what should have been done, not what was done at the hearing on the motion for summary judgment. Where is there "clerical error" to warrant a judgment nunc pro tunc in this cause?

The State filed an "Amended Motion for Summary Judgment," praying merely: "Wherefore, Plaintiff prays that Summary Judgment be entered in its favor for the sum of TEN THOUSAND DOLLARS ($10,-000.00), and costs, and for whatever other relief to which it may show itself entitled," without naming either Tatsch or Miller or for whom or against whom the judgment, if granted, was to run. Defendant Miller filed an answer setting out what he alleged to be fact issues. However, after a hearing, the trial court judge told the state's attorney, "The State will prepare a judgment accordingly," after ruling that: "The Court is going to grant the State's motion for a summary judgment in each of these cases." Interestingly, when the court made this statement, counsel for Miller said: "I have been advised by the State that they plan to file a motion for a new

trial as soon as the judgment is entered." Defendant Miller did file a motion for new trial, a hearing was held thereon, and it was overruled. But, after the hearing on the motion for summary judgment, what happened? The attorney for the State went back to his office, gave his "clerk," "secretary" or "para-legal" a scribbled note, whereupon she took the note and the file to the "typist center," a final judgment was typed up, delivered to a clerk-secretary-para-legal, who then took it to another clerk-secretary-para-legal, who then took it to the trial judge who signed it, and it was filed of record for all the world to see. A hearing on the motion for new trial was held, almost 10 weeks after the judgment was signed and entered, but no complaint was ever made about the form or contents of the final judgment. The only complaint was that the trial court had ruled incorrectly on the State's motions for summary judgment. It was seven weeks later that an attorney for the State, realizing finally that the final judgment did not read satisfactorily to him, filed a motion for a judgment nunc pro tunc upon the ground that the omission in the final judgment was a "clerical error."

There should be no question that if the attorney representing the State had filed a bill of review, he would be poured out of court.

But, whether we call this a bill of review or a nunc pro tunc proceeding, what the majority overlooks is that principle of law that it is fundamentally important in the administration of justice that some finality be accorded to judgments and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done. Compare *Alexander v. Hagedorn*, 220 S.W.2d 196 (Tex.Civ. App.—Austin 1949), *rev'd* 226 S.W.2d 996 (Tex. 1950).

I find that on March 20, 1979, the attorney for the State filed a motion for summary judgment, stating nothing more than: "This motion is based upon certain instruments," *without naming anyone* either in the introductory paragraph or in the pray-

er. The same is true of the amended motion for summary judgment filed on August 22, 1979. At the hearing, the only thing Judge Garcia said that is pertinent to our discussion was "All right. Then, in reviewing the motions for summary judgments filed by the State in *all* of these cases, the Court is going to grant the State's motion for a summary judgment in *each* one of these cases." "The State will prepare a judgment accordingly." And the State did, but the final judgment goes only to the principal and not the surety, Miller. From December 6, 1979, until April 14, 1970, not one single person, including the attorney for the State, his "clerk," or the judge challenged the validity of that judgment. The only person who took any affirmative action toward the judgment was Miller.

If we are to let the parties or the trial court judge later challenge, under such facts as are here shown, the validity of a final judgment, then we might as well throw away the book on judgments, for almost any trial attorney or, for that matter, almost any trial judge will admit, if given a later opportunity, there is not a judgment in this world that cannot be improved in both its wording and its contents.

I would find that the acts here constitute that of a judicial function, i.e., the exercise of judicial function or office, and not clerical error, as that term is defined by law. The office of nunc pro tunc is not to supply omitted action, or to show "intent," but is rather to supply an omission in the record of the action really had but omitted through inadvertence or mistake.

A clerical error is a mistake in writing or copying. As more specifically applied to judgments and decrees a clerical error is a mistake or omission by a clerk, counsel, judge or printer which is not the result of the exercise of the judicial function. In other words, *a clerical error is one which cannot reasonably be attributed to the exercise of judicial consideration or discretion.* (Citations omitted.)

A judicial error, on the other hand, is one made when the court reaches an

incorrect result in the intentional exercise of the judicial function. *It occurs when a judge reaches a wrong or incorrect decision in deciding a judicial question.* (Citations omitted.) *In re Humbdoldt River System*, 77 Nev. 244, 362 P.2d 265 (1961).

Recently, the Amarillo Court of Civil Appeals, *In the Matter of the Marriage of Dunn*, 589 S.W.2d 166 (Tex.Civ.App.—Amarillo 1979), was confronted with a nunc pro tunc situation where the attorneys who had prepared the original judgment had omitted a reference to specific adjudication of the parties' liability for payment of income taxes. The former wife brought the action, alleging "that it was *the original intention* of the Court that all income taxes traceable to properties received by Respondent [the husband] should be born by Respondent . . ." The trial court found the allegations were true and granted judgment nunc pro tunc. The appeals court reversed. There, Chief Justice Reynolds, speaking for a unanimous court, said:

\* \* \* \* \* \*

. . . The judgment prepared was the judgment signed. There may have been a mistake in failing to declare the judge's intention when the judgment was rendered, but, if so, the rendition of judgment was a judicial act, *Love v. State Bank & Trust Co. of San Antonio*, 126 Tex. 591, 90 S.W.2d 819, 821 (1936), which cannot be amended nunc pro tunc. *Miller v. Texas Life Ins. Co.*, 123 S.W.2d 756, 759 (Tex.Civ.App.—Dallas 1938, writ ref'd). Therefore, the judge was powerless to reopen the controversy as closed and sealed by the original judgment and to materially alter its terms by judgment nunc pro tunc. *McHone v. Gibbs*, 469 S.W.2d 789, 790–91 (Tex. 1971).

It may appear facially that the attorney for the State got "sandbagged," but one who contends that he was sandbagged, when *he* had had the judgment prepared, *his* office had carried it to the court for signature, the court had signed it *as presented and prepared* by the attorney for the State, and then he had attended a hearing on a motion for new trial where the sole issue at that hearing was the validity of the judgment then in existence, is not wholly ingenuous. I believe the majority is adopting a new rule of law in the field of judgments nunc pro tunc. There is the clerical error rule, the judicial error rule, and the hiding behind the skirt rule, the last rule, according to the majority today, being supreme.

I respectfully dissent.

Before the court en banc.

CLINTON, Judge, dissenting to denial of appellant's motion for rehearing without written opinion.

This is an appeal by Marvin Miller alone from six judgments styled "Amended Judgment Nunc Pro Tunc," each of which follows forfeiture of an appearance bond with Lawrence Tatsch as principal and Marvin Miller as surety. Though the amount varies from bond to bond, the aggregate total of the six is $92,500. The forfeiture processes progressed more or less simultaneously and all were consolidated for hearing purposes throughout.[1] The Amended Judgment Nunc Pro Tunc finally entered in each case, is valid, a majority of the panel held on original submission, because it only corrected the initial judgment of December 6, 1979 which was viewed by the panel to have been "clearly the result of clerical error." For a backdrop I quickly sketch an outline of what happened.

After judgment nisi, or in some instances an amended judgment nisi, was entered and served, appellant filed his answer and,

1. Though arising out of a criminal law matter, once judgment nisi is entered pursuant to Article 22.02, V.A.C.C.P. and the case is docketed upon the scire facias or upon the civil docket, "the proceedings had therein shall be governed by the same rules governing other civil suits," Article 22.10, V.A.C.C.P., until the judgment is made final as provided in Article 22.14, V.A.C.P. Accordingly, resort to the civil law and rules of procedure is called for. *Blue v. State*, 171 Tex.Cr.R. 449, 341 S.W.2d 917, 919 (1960); *Tinker v. State*, 561 S.W.2d 200 (Tex.Cr.App. 1978).

in those instances, an amended answer; the State opted to obtain summary judgments under Rule 166–A, T.R.C.P., to which appellant makes written reply, supported by an affidavit; November 30, 1979 a hearing was held on the State's motions and appellant's replies; December 6, 1979 a written draft of a judgment was signed by the judge presiding; a motion and amended motion for new trial timely filed, the latter December 28, 1979; hearings were held January 18, 1980—and although it seems a transcription was prepared it is not to be found in the record before us—and February 22, 1980; on the latter day the trial court denied a new trial and ordered that its December 6, 1979 judgment "is hereby final;" on or about April 23, 1980 the State prepared an application to enter a judgment nunc pro tunc and apparently filed it April 24, 1980; appellant submitted written objections and a supporting brief; September 8, 1980 a judgment nunc pro tunc was signed by a successor presiding judge; after appellant made objection to tha one an amended judgment nunc pro tunc was signed September 23, 1980. The problem in all this, essentially, is that the December 6, 1979 written judgment did not in its decretal portion grant the State its recovery against appellant, Marvin Miller, by name.

Confronted with a stout presentation by appellant, we granted him leave to file his motion for rehearing in order to reexamine the recurring "clerical versus judicial error" dichotomy. Today the Court declines to conduct that reexamination.

A judgment routinely goes through three stages: rendition, reduction to writing and entry. It is rendered by "a present act, either by spoken words or signed memorandum, which decides the issues upon which the ruling is made," *Reese v. Piperi,* 534 S.W.2d 329, 330 (Tex.1976); *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58

(Tex.1970); *Flores v. Onion,* 693 S.W.2d 756 (Tex.App.—San Antonio 1985, no writ); see Rule 300, T.R.C.P.[2] The judgment thus rendered is then drafted by counsel for the prevailing party and submitted to the court, Rule 305, and when signed by the judge of the court and entered it becomes "the judgment of the court," *Dikeman v. Snell,* 490 S.W.2d 183, 185 (Tex.1973). A judgment is entered when it is spread upon the minutes of the trial court by a purely ministerial act of a clerk of the court, *Dean v. Warren,* 464 S.W.2d 672, 673 (Tex.Civ. App.—Tyler, 1971, no writ history), *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040, 1041[3] (1912), and "entry" is not synonymous with "signed" when used in relation to a judgment, *Burrell v. Cornelius,* 570 S.W.2d 382, 384 (Tex.1978), *Rosenfield v. Hull,* 304 S.W.2d 571, 572 (Tex.Civ.App.— Texarkana, 1957, writ ref'd) and *Mathis I.S.D. v. Odem I.S.D.,* 222 S.W.2d 270, 272, n. 1 (Tex.Civ.App.—San Antonio, 1949, no writ history).

Finally, the date a judgment or order is signed is significant, for it begins the specified periods of time for filing the various documents in connection with an appeal, and the rule so providing "shall not determine what constitutes rendition of a judgment ... for any other purpose," Rule 306a. See *Reese v. Piperi,* supra, at 331.

Rule 301 mandates that the judgment of the court "shall be so framed as to give the party all the relief to which he may be entitled either in law or equity," and Rule 306 contemplates it will contain "the full names of the parties, as stated in the pleadings, *for and against whom the judgment is* rendered."[4] This is done in the decretal portion of the judgment, *State v. Reagan County Purchasing Co.,* 186 S.W.2d 128, 134 (Tex.Civ.App.—El Paso, 1944, writ ref'd w.o.m.), and it is to that portion that one looks to determine just what it was that the trial court "ordered, adjudged and

---

**2.** All rules cited herein are Texas Rules of Civil Procedure.

**3.** Entry of the judgment is "the ministerial act by which an enduring evidence of the judicial act is afforded."

**4.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

decreed" for purposes of determining if it is a "final judgment," *Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890 (1956); res adjudicata, *Brown v. Wood,* 239 S.W.2d 195, 199 (Tex.Civ.App.—Dallas, 1951); propriety of a nunc pro tunc judgment, *Dikeman v. Snell,* supra, and the like. See generally *Rausheck v. Empire Life Insurance Co.,* 507 S.W.2d 337, 339 (Tex.Civ. App.—Texarkana, 1974, writ ref'd n.r.e.).

With these rudimentary principles in mind, I now turn to the problems created by the parties in the case at bar.

At the conclusion of the November 30, 1979 hearing on motions for summary judgment presented by the State without uttering a word taken down by the court reporter, the trial judge ascertained the principal was still at large and then said:

> "All right. Then, in reviewing the motions for summary judgment filed by the State in all of these cases, the court *is going to grant* the State's motion for a summary judgment in each one of these cases. The State *will prepare* a judgment accordingly."

The question, then, is whether these statements by the judge are a *rendition* of judgment for the court, there being no contemporaneous memorandum more definitive.[5]

It is much like that which divided the Supreme Court in *Lone Star Cement Corporation v. Fair,* 467 S.W.2d 402 (Tex. 1971). A majority there and a unanimous court in *Finlay v. Jones,* 435 S.W.2d 136 (Tex.1968) treated a written draft of judgment signed by the judge and filed with the clerk as constituting a rendition of judgment, whereas the dissenting opinion in *Lone Star Cement,* supra, discerned that "the writing ... did *not* constitute *a rendi-*

*tion* of judgment; rather it is a written memorial of the judgment rendered by oral pronouncement," *id.,* at 408, and further pointed out that in *Finlay v. Jones,* supra, there is not "the slightest indication that judgment in that case was *rendered* by oral pronouncement," *id.,* at 408 (emphasis by Chief Justice Calvert). However, in *Comet Aluminum Company v. Dibrell,* supra, confronting both an oral pronouncement and written draft which enlarged on the pronounced judgment, effect was given to both, the Supreme Court holding that the additional recovery awarded in the latter, "if error, was judicial error and not clerical error."

Compare *Love v. State, Bank & Trust Co.,* 126 Tex. 591, 90 S.W.2d 819 (1936) with *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289 (1953), the latter noting, "In the Love case the order entered was the judgment the court had pronounced, whereas in the case at bar the order was the exact reverse of the judgment actually pronounced by the court," *id.,* at 293. Such experiences no doubt influenced the Supreme Court when in *Reese v. Piperi,* supra, at 330, speaking through Justice Reavley, it cautioned against the practice of oral rendition of judgments, as follows:

> "... The opportunities for error and confusion may be minimized if judgments will be rendered only in writing and signed by the trial judge after careful examination. Oral rendition is proper under the present rules, but orderly administration requires that form of rendition to be in and by spoken words, not in mere cognition, and to have effect only insofar as *those words state* the pronouncement to be a *present rendition of judgment.*"[6]

---

5. In the record of each scire facias cause is something called "Civil Docket (Bond Forfeitures)" with a column for noting "Disposition" by the court. Each one shows only "Summary Judgment granted for State." There is also what is sometimes indexed as "Inside Back of Courts Jacket with Judges Notes," and in each cause but one appears the handwritten notation "Summary Judgment for State Granted"—in number 79–CI–2389 the memo reads "States Motion for Summary Judgment *overruled.*"

6. At the close of a hearing on motion for new trial the judge had said, in pertinent part, "... I have to grant a new trial. * * * I will grant it. I will take this case under advisement. I expect to hear from you lawyers Monday at noon. If you don't resolve it, I will grant a new trial." The Supreme Court held the words spoken by the judge did not constitute an "actual rendition" of judgment. "It is elementary that a 'judgment must be sufficiently definite and cer-

All of which brings us full circle back to the question posed *ante.*

In my judgment the words spoken by the presiding judge after the brief hearing November 30, 1979, do not state a present rendition of judgment. In the first place, the rule itself contemplates that rendition of a summary judgment will be by written instrument, for as the Supreme Court has pointed out in *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979), having a court reporter record summary judgment hearings is "a practice neither necessary nor appropriate to the purposes of such a hearing," *id.,* at 677.[7] In the second place, as Justice Reavley discerned in *Reese v. Piperi,* supra, at 330, "The judge's intention to render judgment in the future cannot be a present rendition of judgment," and the plain words of the presiding judge, that he *"is going to grant"* summary judgment, coupled with his direction that the State *"will* prepare a judgment accordingly," manifests his "intention to render judgment in the future" according to the written draft prepared by the State. Finally, the remarks of the presiding judge do not articulate the requisites of a judgment provided by Rules 301 and 306, leaving an ambiguity with repsect to the party or parties from whom recovery is to be awarded, and in what respective amounts.[8] Those requisites were left to the written draft of judgment to be prepared by the State and signed by the judge, as was done December 6, 1979. *Comet Aluminum Company v. Dibrell,* supra.

"The cases uniformly hold that judicial error in the rendition of judgments is not correctable by nunc pro tunc order merely because it was induced by clerical error," such as the State claims here. *Lone Star Cement Corp. v. Fair,* supra, at 406,—"the *cause* of the error is not controlling," [original emphasis]; *Finlay v. Jones,* and *Love v. State Bank & Trust Co.,* both supra; *Wood v. Griffin & Brand of McAlley,* 671 S.W.2d 125, 130 (Tex.App.—Corpus Christi 1984, no writ).[9]

The panel majority on original submission viewed the written draft judgment signed by the judge December 6, 1979 as "clearly the result of clerical error," but

---

tain to define and protect the rights of all litigants, or it must provide a definite means of ascertaining such rights.' 33 Tex.Jur.2d Judgments, Sec. 34 ...," *Rausheck v. Empire Life Insurance Co.,* 507 S.W.2d 337, 340 (Tex.Civ. App.—Texarkana, 1974, writ ref'd n.r.e.).

**7.** The Supreme Court cites as authority its earlier opinion in *Richards v. Allen,* 402 S.W.2d 158 (Tex.1966) wherein at page 161 the late Justice Norvell, in his usual scholarly fashion, explained, that the rule "does not purport to authorize the taking of evidence in the usual sense," and "while it is essential that depositions, admissions and affidavits be on file ... it is not necessary that they be formally offered in evidence upon the summary judgment hearing." Indeed, under Federal Rule 56, from which our Rule 166–A was derived, see Historical Note following it, it has been held that a "hearing" is not mandated, *Benson v. Matthews,* 554 F.2d 860, 862 (CA8 1977); *Anderson v. Viking Pump Division,* 545 F.2d 1127, 1129 (CA8 1976); at least not necessarily an "oral hearing," *Kibort v. Hampton,* 538 F.2d 90, 91 (CA5 1976); see *Thacker v. Thacker,* 496 S.W.2d 201, 204–205 (Tex.Civ.App.—Amarillo 1973, writ dism'd); see also *Smart v. Jones,* 530 F.2d 64 (CA5 1976)—an informal conference in chambers suffices.

**8.** To be recalled is the requirement of Rule 306 that the judgment contain the full names of the parties "... against whom the judgment is *rendered."* And Article 22.14, V.A.C.C.P. contemplates that a final judgment against the principal and sureties will be "for the amount in which they are respectively bound," in order to base "[s]eparate executions ... against each party for the amount adjudged against him."

**9.** Chief Justice Robert W. Calvert, Retired, himself the author of many of the opinions cited and discussed herein, presented what is truly an Amicus Curiae Brief, since neither he nor his law firm had any interest in the outcome of the litigation, in *Dikeman v. Snell,* supra. The statement of what the cases uniformly hold quoted in the text above is excerpted from that brief at page 5. His perception in this regard is remarkable and precisely stated, *viz:*

"Actually, when earlier controlling cases and statutes are carefully analyzed, the conviction clearly emerges that there is no such thing as clerical errors in rendering judgments and no such thing as judicial error in the entering of judgments. Conversely, it follows that errors made in *rendering* judgments are always judicial and uncorrectable after the term of court at which rendered, and error made in *entering* judgments are always clerical and correctable." [Emphasis by Chief Justice Calvert.]

did not mention much less discuss the matter of the subsequent ruling of the trial court on appellant's motion for new trial. In both a motion and amended motion appellant attacked the grant of summary judgment in each case, prayed that it be set aside and for a new trial. For its part the State presented a written motion to deny the motion for new trial stating, *inter alia,* that the court "did not err in granting the Plaintiff's Motion for Summary Judgment." There were two short consolidated hearings, the latter beginning with the judge calling each case by style and number, then remarking that motions for a new trial were filed by appellant and observing the principal was still at large. The observation being confirmed by counsel, the court then ruled: "In each one of these motions for a new trial will be overruled by the court. Do you wish to give notice of appeal on those cases?" Whereupon notice of appeal was given in open court. On the same day, the court signed a written draft order in which it found that the motion for new trial should be denied and "the Judgment heretofore *entered* herein should be made final," the decretal portion reading as follows:

> "It is therefore ORDERED that the Judgment *entered* in this cause on the 6th day of December, 1979, be and it is hereby final and that Surety Defendant's [Amended] Motion for New Trial is hereby denied."

That overruling the motion for new trial and making the December 6, 1979 judgment final were "the deliberate result of judicial reasoning and determination," Reavley & Orr, Trial Court's Power to Amend its Judgments, 25 Baylor L.R. 191, 195, simply cannot be gainsaid.[10] Nor may *they* be attributed to clerical error, in this instance.

As I would construe the matter, then, the oral statements coupled with the written draft signed by the trial judge and followed by an order making the latter "final" constitute a *summary* judgment that the State have and recover from the principal the specified amount of money in each. Therefore, the summary judgment fails to rule on the claim by the State against appellant, the surety. As such it is but a partial summary judgment which does not finally dispose of the whole matter in controversy as to all parties. *Joe's Bonding Company v. State,* 481 S.W.2d 145 (Tex.Cr.App.1972); *Smith v. State,* 485 S.W.2d 787 (Tex.Cr.App.1972).

I would reverse and remand each Amended Judgment Nunc Pro Tunc. Because the majority refuses even to consider the matter, I respectfully dissent.

---

10. "During the pendency of the motion for new trial and the thirty day period following its overruling, the court has the power to vacate, modify, correct, or reform the judgment or to grant a new trial," *Transamerican Leasing Company v. Three Bears, Inc.,* 567 S.W.2d 799, 780 (Tex.1978). That power was characterized as "plenary" in *Schley v. Structural Metals, Inc.,* 595 S.W.2d 572, 584 (Tex.Civ.App.—Waco, 1979, writ ref'd n.r.e.). See current Rule 329b, T.R.C.P.